## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELINDA DUNN, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-cv-00515 |
| v. | (SAPORITO, M.J.) |
| TUNKHANNOCK TOWNSHIP, et al., | |
| Defendants. | |

## MEMORANDUM

The plaintiff, Melinda Dunn, appearing through counsel, filed her original complaint in this action on March 31, 2020. (Doc. 1.) She filed her amended complaint on June 30, 2020. (Doc. 12.) The defendants, Tunkhannock Township and Stephen Williams, also appearing through counsel, have filed a Rule 12(b)(6) motion to dismiss the amended complaint for failure to state a claim. (Doc. 13.) The motion is fully briefed and ripe for decision. (Doc. 14; Doc. 15; Doc. 16.)

### I.   FACTUAL ALLEGATIONS

Shortly after midnight on July 30, 2018, the plaintiff, Melinda Dunn, was involved in a motor vehicle accident. Dunn was driving under the influence of alcohol at the time. While driving, her cell phone rang

and she briefly took her eyes off the road. Dunn then struck an abandoned car that was parked off the roadway, near a home. Dunn's vehicle became inoperable, with smoke coming from the engine compartment of her car. She was injured in the accident, with wounds on her arms and a chest contusion from the deployment of her car's airbag.

Dunn's husband, Kenneth Nestorick, arrived on the scene and moved her vehicle away from the abandoned car and the home in case it caught fire. One of the defendants, Officer Williams, arrived on the scene while Nestorick was moving Dunn's vehicle. Williams had been driving by the scene, transporting another individual in the back seat of his patrol vehicle. Nestorick told Williams that Dunn had been in a car accident. Meanwhile, Dunn had exited the vehicle and walked a few yards away. Emergency medical personnel had arrived on the scene, and Dunn was seeking medical attention. Before she was seen by the medical personnel, however, Williams approached Dunn and told her he smelled alcohol.

Williams grabbed Dunn by the arm, spun her around, and threw her to the ground, face down. Williams then kneeled with one knee on Dunn's left arm, causing injury to her rotator cuff. While kneeling on

Dunn's injured left arm, Williams reached to bring her right arm behind her back to handcuff her. Williams handcuffed Dunn so tightly that the handcuffs broke the skin on her wrists.

As Williams was handcuffing Dunn, he changed position and sat on the backs of Dunn's feet. Dunn, however, suffers from congenital club feet.[1] Dunn exclaimed: "You are hurting me! I have medical problems with my feet!" After she said this, Williams sat back on her feet, further crushing them into the ground. He did nothing to accommodate her disability. Although Dunn did not resist in any way, Williams told her to "stop resisting."

Eventually, Williams allowed emergency medical personnel to treat Dunn. When state police officers arrived, Williams gave his handcuff key

---

[1] The amended complaint alleges that, over the course of years, Dunn has had multiple surgeries to attempt to correct this medical condition. It further alleges that Dunn had been determined to be "disabled" by the Social Security Administration, but this administrative determination is insufficient to show that she is disabled for the purposes of the ADA, as the social security disability regulations employ an entirely different standard. *See Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 n.5 (3d Cir. 2001). At least one federal court, however, has found the same condition to constitute a disability for the purposes of an ADA failure-to-provide-reasonable-accommodations claim at the pleadings stage. *See Brown v. Woodford*, No. C 05-2937 SI (pr), 2007 WL 735768, at *2 (N.D. Cal. Mar. 7, 2007).

to the emergency medical personnel and left the scene, presumably to continue transporting the individual he had in the back of his patrol car.

Dunn was transported to a hospital for emergency medical treatment, and then released. She was diagnosed and treated for an Achilles tendon rupture, which required her to spend several weeks in a wheelchair and to receive home healthcare. She was also diagnosed with a torn rotator cuff, which required medical treatment and physical therapy.

Dunn was charged by the state police with the misdemeanor offenses of driving under the influence of alcohol and resisting arrest, and the summary offenses of disregarding traffic lanes and careless driving. Dunn pleaded guilty to driving under the influence of alcohol because she was guilty of that offense. The charge of resisting arrest was withdrawn, allegedly because she did not resist arrest.[2]

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which

---

[2] According to publicly available state court records, the summary offenses were nolle prossed.

relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F.

Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F.

Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   DISCUSSION

The amended complaint is comprised of four counts. In Count One,

the plaintiff asserts a § 1983 federal civil rights claim against Williams

for the excessive use of force in effecting her arrest, in violation of her

Fourth Amendment right to be free from unreasonable seizure. In Count

Two, she asserts federal claims against Williams's employer, the

Township, for discrimination on the basis of her disability, in violation of

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131

*et seq*., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.

Finally, in Counts Three and Four, she asserts state-law tort claims for

assault and battery against Williams. For relief, she seeks an unspecified

award of compensatory and punitive damages from both defendants.

The defendants have moved to dismiss this action. First, they seek

dismissal of the plaintiff's § 1983 excessive force claim to the extent it is

based on the Fourteenth Amendment rather than the Fourth

Amendment. Second, they seek dismissal of the plaintiff's § 1983

excessive force and state-law assault and battery claims on the ground

that the force used by Williams was reasonable under the circumstances alleged. Third, they seek dismissal of the plaintiff's ADA/RA claims against the Township on the ground that she has failed to allege that the alleged discriminatory conduct by Williams occurred *because of* her disability. Finally, they seek dismissal of the plaintiff's claims for punitive damages against the Township and against Williams to the extent he is sued in his official capacity.

### A. Fourteenth Amendment

The defendants seek dismissal of Count One to the extent it relies on the Fourteenth Amendment, arguing that the Fourth Amendment is the proper and exclusive vehicle for an § 1983 excessive force claim.

It is clearly established that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a [Fourteenth Amendment] 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Davenport v. Borough of Homestead*, 870 F.3d 273, 279 (3d Cir. 2017). As the defendants note in their briefs, this is the "more specific provision" or

"explicit source rule," derived from the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994). *See Cost v. Borough of Dickson City*, Civil Action No. 3:18-1494, 2020 WL 6083272, at *3 (M.D. Pa. Oct. 15, 2020), *appeal filed*, No. 20-3120 (3d Cir. Oct. 21, 2020).

But the plaintiff here does not assert a substantive due process claim. She has explicitly brought this claim under the Fourth Amendment, referencing the Fourteenth Amendment only to recognize that the Fourth Amendment—which applies on its face to the federal government only—was incorporated against the states later by operation of the Fourteenth Amendment's due process clause. *See Williams v. Papi*, 30 F. Supp. 3d 306, 311–12 (M.D. Pa. 2014). This is the "incorporation doctrine," and its invocation is entirely appropriate in this context. *See id*. Thus, the defendants' argument is not well taken.

**B. § 1983 Excessive Force Claim**

The defendants have moved to dismiss the plaintiff's § 1983 excessive force claim for failure to state a claim upon which relief can be granted. They argue that, based on the allegations of the amended complaint, Williams's use of force during Dunn's arrest was reasonable.

To state a § 1983 claim for excessive force in violation of the Fourth

Amendment, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003). The test of reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivations." *Graham*, 490 U.S. at 397. "Thus, if a use of force is objectively unreasonable, an officer's good faith is irrelevant; likewise, if a use of force is objectively reasonable, any bad faith motivation on the officer's part is immaterial." *Estate of Smith*, 318 F.3d at 515. Among the factors to be considered in determining whether a seizure was reasonable are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer[] or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Estate of Smith*, 318 F.3d at 515. Additional factors may include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of

persons with whom the police officer[] must contend at one time."
*Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997); *see also Estate of Smith*, 318 F.3d at 515.

The issue of reasonableness is typically a question of fact for a jury to resolve. *See Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004); *Estate of Smith*, 318 F.3d at 516; *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999). "In cases removing any issue of fact after the completion of discovery, summary judgment may be appropriate." *Ford v. City of Pittsburgh*, Civil Action No. 13-1364, 2014 WL 7338758, at *3 (W.D. Pa. Dec. 22, 2014); *see also Plumhoff v. Rickard*, 572 U.S. 765, 775–77 (2014) (finding that, based on undisputed material facts, police officers were entitled to summary judgment on Fourth Amendment excessive force claims).

Here, viewing the facts alleged in the light most favorable to the plaintiff and considering the totality of circumstances alleged, we are not persuaded that the facts alleged are insufficient to "plausibly give rise to an entitlement for relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). At the time of the allegedly unreasonable use of force by Williams, the plaintiff was steps away from her vehicle, seeking medical attention from

emergency medical personnel. Based on a smell of alcohol, Williams suspected that Dunn had been driving her now-immobilized vehicle while intoxicated. But she posed no immediate threat to the officer or to others. As alleged in the amended complaint, she was not violent or dangerous, she did not attempt to flee or otherwise evade arrest, and she did not resist arrest in any way. There was nothing to suggest that she might be armed, and there were no other suspects with whom Williams had to contend.[3] Despite this context, Williams allegedly manhandled Dunn, throwing her to the ground, kneeling first on her arm and then on her feet while he handcuffed her. He allegedly did so with sufficient force to tear her rotator cuff and rupture her Achilles tendon.[4] Dunn allegedly told him that she was in pain and had a medical condition with her feet, but Williams continued—or perhaps even increased—the application of his weight to her feet after being so advised.

---

[3] The facts alleged suggest that Williams may have had another person detained in the back of his patrol vehicle, but that person was confined there and posed no concurrent threat to the officer or others.

[4] The defendants argue that these injuries alone do not demonstrate that the force used was excessive, but as the plaintiff has noted in her brief, "the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." *Sharrar*, 128 F.3d at 822.

Based on these same factual allegations, the defendants contend that the force used was reasonable under the circumstances. This contrary interpretation of the same facts may itself be reasonable, but a plaintiff is simply not required to *disprove* alternative interpretations of the facts at the pleading stage. *See Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 497 (W.D. Pa. 2011), *aff'd*, 504 Fed. App'x 182 (3d Cir. 2012); *see also Ford*, 2014 WL 7338758, at *4.

### C. State-law Assault and Battery Claims

The defendants have moved to dismiss the plaintiff's state-law tort claims on the very same ground, arguing that the force used by Williams during Dunn's arrest was reasonable.

"A claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery." *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000) (citing *Renk v. City of Pittsburgh*, 641 A.2d 289 (1994)). As the state supreme court has explained:

> Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person. A police officer may use reasonable force to prevent interference with the

> exercise of his authority or the performance of his duty.
> In making a lawful arrest, a police officer may use such
> force as is necessary under the circumstances to
> effectuate the arrest. The reasonableness of the force
> used in making the arrest determines whether the
> police officer's conduct constitutes an assault and
> battery.

*Renk*, 641 A.2d at 293 (citation and internal quotation marks omitted).

For the very same reasons given above with respect to the plaintiff's § 1983 excessive force claim, we find that, viewing the facts alleged in the light most favorable to the plaintiff, she has alleged sufficient facts to state a plausible claim that the force used by Williams was unreasonable, thus constituting assault and battery under Pennsylvania common law. A plaintiff is not required to anticipate and contradict a defendant's alternative interpretations of these same facts at the pleadings stage. *See Kriss*, 827 F. Supp. 2d at 497; *Ford*, 2014 WL 7338758, at *4.

**D. ADA/RA Discrimination Claims**

The defendants have moved to dismiss the plaintiff's ADA/RA claims against the Township for failure to state a claim upon which relief can be granted. The defendants argue that Dunn has failed to sufficiently allege that she was discriminated against on the basis of her disability. Specifically, they argue that she has failed to allege that the arresting

officer used excessive force against her *because of* her disability. Among other things, they note that she has failed to allege that the officer was aware of her disability prior to engaging in force that exacerbated a preexisting medical condition.

As the Third Circuit has recognized, "the ADA can indeed apply to police conduct during an arrest." *Haberle v. Troxell*, 885 F.3d 170, 180 (3d Cir. 2018); *see also id.* at 181 (noting that "[e]ven though there is some disagreement concerning the point during a law enforcement encounter at which the ADA applies to police conduct, no court of appeals has held that the ADA does not apply at all").[5] This court has previously held that compensatory damages are available in the arrest context under the ADA and the RA. *See Young v. Sunbury Police Dep't*, 160 F. Supp. 3d 802, 810 (M.D. Pa. 2016).

This court has also previously noted that "there are two theories

---

[5] Claims under Title II of the ADA and Section 504 of the RA are largely coextensive. The substantive standards for determining liability under both statutes are the same. *See McDonald v. Pa. Dep't of Pub. Welfare*, 62 F.3d 92, 94–95 (3d Cir. 1995). There are some distinctions between the two statutory schemes, but none are relied upon by the defendants in their motion to dismiss. *See generally Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir. 1997) (discussing similarities and differences between ADA and RA), *aff'd*, 524 U.S. 206 (1998).

under which police actions have been found to fall under the ADA and RA: the 'wrongful arrest' theory and the 'reasonable accommodation' theory." *Id.* at 809. Here, the plaintiff relies on the "reasonable accommodation" theory, which "applies when police investigate and arrest a person with a disability for a crime unrelated to that disability, but fail to 'reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.'" *Id.* at 810 (quoting *Gohier v. Enright*, 186 F.3d 1216, 1220–21 (10th Cir. 1999)).

The plaintiff alleges that she has a disability—club feet—and that the arresting officer failed to reasonably accommodate her disability, causing her to suffer greater injury—a ruptured Achilles tendon[6]—in that process than other arrestees would have suffered. But "[i]f a police officer incurs a duty to reasonably accommodate a person's disability during an arrest, this duty would have arisen only if [the arresting officer] had known that [the plaintiff] needed an accommodation." *J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015). The

---

[6] She does not argue that her torn rotator cuff was caused by the officer's failure to reasonably accommodate her disability.

defendants argue that the arresting officer was not aware of Dunn's disability "prior to engaging" with her. But the plaintiff has alleged that she told the officer of her disability and that she was experiencing pain *during* the engagement. After he was made aware of this, the arresting officer allegedly continued—or perhaps even increased—the application of his weight to her feet, and we find it reasonable to infer from the facts alleged that the ruptured tendon may have been caused by this later portion of the officer's use of force.

Based on the facts alleged in the amended complaint, viewed in the light most favorable to the plaintiff, we find that she has pleaded sufficient facts to establish that the arresting officer failed to reasonably accommodate her disability in the course of her arrest, which caused her to suffer injury. *See Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 929–30 (E.D. Cal. 2015) (plaintiffs adequately alleged failure to reasonably accommodate post-surgical sequalae with significant limitations known to the arresting officers); *cf. Gorman v. Bartch*, 152 F.3d 907, 913–14 (8th Cir. 1998); *Sacchetti v. Gallaudet Univ.*, 181 F. Supp. 3d 107, 129–30 (D.D.C. 2016); *Young*, 160 F. Supp. 3d at 811–12.

### E. Punitive Damages

The defendants have moved to dismiss the plaintiff's claims for punitive damages against the Township and against Williams in his official capacity.

In the demand for relief in her amended complaint, the plaintiff has requested an award of punitive damages against the Township under Count Two, which asserts disability discrimination claims under Title II of the ADA and Section 504 of the RA. It is well settled that punitive damages are not an available remedy under either Title II of the ADA or under Section 504 of the RA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). In her opposition brief, Dunn has conceded as much. (Doc. 15, at 24.) Thus, we will grant the motion with respect to Count Two and dismiss the plaintiff's claim for punitive damages against the Township.

The plaintiff also seeks an award of punitive damages against Williams in Counts One, Three, and Four of the amended complaint, which assert § 1983 excessive force and state-law assault and battery claims. The defendants seek to dismiss punitive damages claims against Williams to the extent he is sued in his official capacity. The amended complaint itself does not explicitly state whether Williams is sued in his

personal or official capacity, and we note that the Township is not named as a defendant to any of these claims asserted against Williams.[7]

It is well-established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Likewise, punitive damages are not available against a municipality under state law. *Feingold v. Se. Pa. Transp. Auth.*, 488 A.2d 284, 293 (Pa. Super. Ct. 1985), *aff'd*, 517 A.2d 1270 (Pa. 1986). *See generally City of Newport*, 453 U.S. at 259–60 & n.21 ("The general rule today is that no punitive damages are allowed unless expressly authorized by statute."). Meanwhile, "[a]n official-capacity suit is generally merely another way of pleading an action against an entity of which an officer is an agent. Such a suit is properly treated as a suit against the entity." *Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (citation omitted). "Since a municipality cannot be liable for punitive damages, neither can an individual sued in her official

---

[7] The amended complaint seeks to hold the Township liable for ADA/RA violations only. If it had named the Township as a defendant to the § 1983 or state-law tort claims as well, any claims against Williams in his official capacity would have been subject to dismissal as redundant. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 419 (M.D. Pa. 2014).

capacity." *Id.*

In her opposition brief, the plaintiff implicitly concedes that punitive damages are not available against an official-capacity municipal defendant such as Williams, construing her own amended complaint as suing Williams in his personal capacity *only*.[8] (*See* Doc. 15, at 22.) While it is not clear from the face of the pleading itself that Dunn has sued Williams in his personal capacity only, in light of this concession in her brief, the amended complaint's explicit demand for punitive damages, the unequivocal bar against obtaining punitive damages from municipal defendants in their official capacities, and the absence of any allegation in the amended complaint of a municipal policy or custom that caused the allegedly unconstitutional conduct by Williams,[9] we will adopt her interpretation of the complaint as alleging personal-capacity claims *only* against Williams.[10] The defendants' motion will be denied with respect to

---

[8] Punitive damages are available against an individual defendant in his or her personal capacity. *Strickland*, 647 F. Supp. 2d at 428–29.

[9] *See generally Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690–91 (1978); *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

[10] While "[a] defendant being sued in his or her personal capacity should be given adequate notice that his or her personal assets are at *(continued on next page)*

this issue because the amended complaint seeks punitive damages from Williams in his personal capacity only.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted in part and denied in part. The plaintiff's punitive damages claim against Tunkhannock Township will be dismissed with prejudice, and the action otherwise will be permitted to proceed. The defendants will be directed to answer the complaint.

An appropriate order follows.


Dated: March 24, 2021          ___*s/Joseph F. Saporito, Jr.*___
                               JOSEPH F. SAPORITO, JR.
                               United States Magistrate Judge

---

stake," and some other circuits "require the complaint to specifically identify the capacity in which a defendant is being sued" or face a presumption that official-capacity claims only are intended, the Third Circuit "has taken a more flexible approach," requiring us to "interpret the pleading" instead of applying a strict rule presuming one capacity or the other when the complaint is silent on the matter. *See Melo v. Hafer*, 912 F.2d 628, 636 & n.7 (3d Cir. 1990); *see also Gregory v. Chehi*, 843 F.2d 111, 119 (3d Cir. 1988) ("The plaintiff's federal court complaint is deficient in failing to indicate whether he sues the individual defendants in their official or personal capacities. We therefore must interpret the pleading to ascertain what plaintiff should have stated specifically."). Of course, "[i]t is obviously preferable for the plaintiff to be specific in the first instance to avoid any ambiguity." *Melo*, 912 F.2d at 636 n.7.